UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **BRIAN C. PEERY, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED** | § § § § | |
| **PLAINTIFF,** | § § | **NO. 6:15-CV-00094-MHS** |
| **VS.** | § § | **JURY** |
| **CACTUS DRILLING COMPANY, L.L.C. DEFENDANT.** | § § § | |

<u>**STIPULATION AND SETTLEMENT AGREEMENT**</u>

PLAINTIFFS (on behalf of themselves, OPT-IN PLAINTIFFS, and all members of the SETTLEMENT CLASSES), DEFENDANT, and their respective counsel of record enter into this SETTLEMENT AGREEMENT.[1]

**I.      RECITALS AND BACKGROUND**

A.      On February 2, 2015, Plaintiff Brian Peery commenced this LITIGATION against DEFENDANT by filing a complaint in the United States District Court for the Eastern District of Texas, Tyler Division, Case Number 6:15-cv-00094-MHS.   In his original complaint, Plaintiff Peery asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of himself and other individuals who had been employed by DEFENDANT from February 2, 2012 to February 2, 2015. Plaintiff Peery alleged, on behalf of himself and other individuals who had been employed by DEFENDANT, that PLAINTIFFS were not properly paid overtime wages related to bonus payments. [*See* Dkt. No. 1].

---

[1] Terms that appear in all caps shall have the meaning assigned to them in this SETTLEMENT AGREEMENT.

**Exhibit 1**

B.     On March 9, 2015, Plaintiff Peery amended the Complaint in this LITIGATION to assert that he was making allegations of FLSA violations on behalf of himself and other individuals who had been employed by DEFENDANT in positions as ". . . not necessarily limited to, Yard Hands, Floor Hands, Lead Tong Hands, Motor Men, Derrick Hands, and Drillers." [Dkt. No. 4, ¶7].

C.     On March 30, 2015, the COURT filed its Scheduling Order (FLSA Case). [Dkt. No. 11].

D.     On April 8, 2015, Plaintiff Peery amended the First Amended Complaint in this LITIGATION to include state law claims under the New Mexico Minimum Wage Act alleging that PLAINTIFFS were not properly paid overtime wages. [*See* Dkt. No. 14, ¶8].

E.     In response to the original and amended complaints [Dkt. Nos. 1, 4, 14], DEFENDANT filed answers disputing the complaints' material allegations both as to fact and law and denying any liability to Plaintiff Peery, PLAINTIFFS, or to other current or former employees of DEFENDANT who had been employed by DEFENDANT from 2012 through 2015. [*See* Dkt. Nos. 8 and 18].

F.     Pursuant to the Scheduling Order, the PARTIES exchanged detailed information and numerous documents and conducted detailed legal and factual analyses of PLAINTIFFS' claims and DEFENDANT'S defenses. The PARTIES also filed pleadings under the Scheduling Order. [*See* Dkt. 17 (Pl's Notice of Filing Answers to the Court's Interrogatories); *see also* Dkt. 19 (Def's Verified Summary of Work by Pl)].

G.     On May 21, 2015, to comply with the Scheduling Order and discuss the Lawsuit's allegations and defenses, the PARTIES conferred in person through counsel to

2

engage in all-day settlement negotiations.

H.      On June 1, 2015, the PARTIES filed their Joint Status Report Regarding Settlement that, in part, notified that the PARTIES wished to continue settlement negotiations for thirty days. [*See* Dkt. No. 22].

I.      The PARTIES' ongoing settlement negotiations culminated in this SETTLEMENT AGREEMENT.

J.      It is the desire and intention of the PARTIES that this SETTLEMENT AGREEMENT shall, for each member of the FINAL SETTLEMENT CLASSES, fully, finally, and forever completely settle, compromise, release, and discharge any and all RELEASED CLAIMS.

K.      PLAINTIFFS' Counsel conducted a thorough investigation of the claims that PLAINTIFFS asserted against DEFENDANT in the LITIGATION and/or that relate to or could have arisen out of the same facts alleged in the LITIGATION or relating to the employment of the PLAINTIFFS and members of the SETTLEMENT CLASSES, including both asserted and unasserted claims. Based on their independent investigation and evaluation, PLAINTIFFS' Counsel believe that the settlement with DEFENDANT for the consideration of and on the terms set forth in this SETTLEMENT AGREEMENT is fair, reasonable, and adequate, and is in the best interest of PLAINTIFFS, OPT-IN PLAINTIFFS, and the members of the SETTLEMENT CLASSES in light of all known facts and circumstances, including the risk of delay, defenses asserted by DEFENDANT, and numerous potential certification and appellate issues.

L.      RELEASED PERSONS expressly deny any liability or wrongdoing of any

kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this LITIGATION and PLAINTIFFS' original and amended complaints.  RELEASED PERSONS contend they complied with all applicable federal and state laws at all times.  By entering into the SETTLEMENT AGREEMENT, DEFENDANT does not admit any liability or wrongdoing and expressly denies the same.  It is expressly understood and agreed by the PARTIES that the SETTLEMENT AGREEMENT is being entered into by DEFENDANT solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the claims asserted in the LITIGATION on the terms set forth herein.  Nothing in the SETTLEMENT AGREEMENT, the settlement proposals exchanged by the PARTIES, or any motions filed or Orders entered pursuant to the SETTLEMENT AGREEMENT, may be construed or deemed as an admission by RELEASED PERSONS of any liability, culpability, negligence, or wrongdoing, including that any member of the SETTLEMENT CLASSES was not properly paid overtime wages, and the SETTLEMENT AGREEMENT, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the SETTLEMENT AGREEMENT.  Further, neither the SETTLEMENT AGREEMENT, any motions filed, information and/or documents exchanged by the PARTIES in preparation for the mediation, settlement proposals exchanged by the PARTIES, or Orders entered pursuant to the SETTLEMENT AGREEMENT, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class

4

certification has been satisfied in this LITIGATION or any other action, except for the limited settlement purposes set forth in this SETTLEMENT AGREEMENT.

      M.    This SETTLEMENT AGREEMENT shall automatically terminate, and the certification of the SETTLEMENT CLASSES shall automatically be cancelled if this SETTLEMENT AGREEMENT is terminated pursuant to Section below entitled "Termination of Settlement Agreement," in which event this SETTLEMENT AGREEMENT shall not be offered, received, or construed as an admission of any kind concerning whether any class or collective is certifiable or any other matter.

      N.    The PARTIES shall request the COURT approve, administer, and implement the SETTLEMENT AGREEMENT with respect to all actions and claims settled in this SETTLEMENT AGREEMENT.

## II.    DEFINITIONS

      A.    "AMENDED COMPLAINT" refers to the Complaint filed on April 8, 2015 and shown at Dkt. 14.

      B.    "AUTHORIZED CLAIMANT" means a member of the SETTLEMENT CLASSES, or the authorized legal representative of such member of the SETTLEMENT CLASSES, who submits a timely and fully completed CLAIM FORM PACKAGE and becomes entitled to receive a SETTLEMENT PAYMENT.

      C.    "BAR DATE" is the date that is ninety calendar days after the date on which the CLAIMS ADMINISTRATOR post-marks the SETTLEMENT NOTICE and CLAIM FORM PACKAGES to the members of the SETTLEMENT CLASSES. Members of the SETTLEMENT CLASSES must timely file a fully completed CLAIM FORM PACKAGE

(CLAIM FORM AND SUBSTITUTE IRS W-9 FORM) so that it is received by the CLAIMS ADMINISTRATOR on or before ninety calendar days after the date CLASS NOTICE and CLAIM FORM PACKAGES are post-marked in order to be considered an AUTHORIZED CLAIMANT.

      D.    "CLAIM FORM" refers to the document in a CLAIM FORM PACKAGE entitled "Claim Form."

      E.    "CLAIM FORM PACKAGES" refer to the documents substantially in the form of Exhibit 2 attached hereto which includes both a CLAIM FORM and SUBSTITUTE IRS W-9 FORM.

      F.    "CLAIMS ADMINISTRATOR" means the third-party claims administration firm agreed upon by DEFENDANT and appointed by the COURT, which will perform all of the administrative duties assigned below in Section XI. The third-party claims administration firm designated to serve as the CLAIMS ADMINISTRATOR is ILYM Group, Inc.

      G.    "CLASS COUNSEL" refers to Michael A. Josephson of Fibich, Hampton, Leebron, Briggs & Josephson, LLP and Richard J. (Rex) Burch of Bruckner Burch, PLLC following their appointment by the COURT as CLASS COUNSEL.

      H.    "CLASS COUNSEL'S FEES, COSTS AND EXPENSES" means the total amount of CLASS COUNSELS' attorneys' fees, costs, and expenses approved by the COURT upon application by CLASS COUNSEL. CLASS COUNSELS' attorneys' fees will not exceed thirty-three percent (35%) of the MAXIMUM GROSS SETTLEMENT AMOUNT. In addition to attorneys' fees, CLASS COUNSEL will be entitled to recover

reasonable costs and expenses. CLASS COUNSELS' attorneys' fees, costs, and expenses are included in the MAXIMUM GROSS SETTLEMENT AMOUNT.

I.    "COURT" means the COURT having jurisdiction of the LITIGATION, at any stage, presently the United States District Court for the Eastern District of Texas, Tyler Division.

J.    "COVERED POSITION" means Yard Hands, Floor Hands, Lead Tong Hands, Motor Men, Derrick Hands, and Drillers positions held by members of the SETTLEMENT CLASSES while employed with DEFENDANT from February 2, 2012 to the date of the PRELIMINARY APPROVAL ORDER.

K.    "DEFENDANT" is Cactus Drilling Company, LLC.

L.    "FINAL APPROVAL ORDER" refers to the order of the COURT (i) granting FINAL JUDGMENT; (ii) adjudging the terms of the SETTLEMENT AGREEMENT to be fair, reasonable and adequate, and directing consummation of its terms and provisions; (iii) approving CLASS COUNSEL'S application for an award of CLASS COUNSEL'S fees and costs; (iv) certifying the SETTLEMENT CLASSES for purposes of settlement only; and (v) dismissing the LITIGATION on the merits and with prejudice and permanently enjoining all members of the FINAL SETTLEMENT CLASSES from prosecuting against DEFENDANT and the RELEASED PERSONS any RELEASED CLAIMS.

M.    "FINAL APPROVAL HEARING" means the hearing contemplated by the PARTIES, at which the COURT will approve, in final, the SETTLEMENT AGREEMENT and make such other final rulings as are contemplated by this SETTLEMENT AGREEMENT. The date of the FINAL APPROVAL HEARING shall be set by the

COURT, and notice of such hearing shall be provided to members of the SETTLEMENT CLASSES in the SETTLEMENT NOTICE, although such hearing may be continued by the COURT without further notice to members of the SETTLEMENT CLASSES, other than those who are OBJECTORS.

N.     "FINAL EFFECTIVE DATE" refers to the first date after all of the following events and conditions have been met or have occurred:    (1) the COURT entered a PRELIMINARY APPROVAL ORDER; (2) the BAR DATE has passed; (3) the COURT entered a FINAL APPROVAL ORDER; (4) the deadline has passed without action for counsel for the PARTIES to terminate the SETTLEMENT AGREEMENT; and (5) the time to appeal from the FINAL APPROVAL ORDER has expired and no Notice of Appeal has been filed or in the event that an appeal is filed, the appellate process is exhausted and the FINAL APPROVAL ORDER has remained intact in all material respects.  The PARTIES agree that the COURT shall retain jurisdiction to enforce the terms of this SETTLEMENT AGREEMENT unless specifically set forth otherwise herein.

O.     "FINAL JUDGMENT" refers to the judgment entered by the COURT in conjunction with the FINAL APPROVAL ORDER dismissing the LITIGATION on the merits and with prejudice and permanently enjoining all members of the SETTLEMENT CLASSES from prosecuting against DEFENDANT and the RELEASED PERSONS, any RELEASED CLAIMS. The PARTIES shall submit an order of FINAL JUDGMENT setting forth the terms of this SETTLEMENT AGREEMENT, by incorporation or otherwise, for execution and entry by the COURT at the time of the FINAL APPROVAL HEARING or at such other time as the COURT deems appropriate.

P.      "FINAL SETTLEMENT CLASSES" refers to the FLSA SETTLEMENT CLASS and STATE LAW SETTLEMENT CLASS.

Q.      "FLSA RELEASING PERSONS" means each and every member of the FLSA SETTLEMENT CLASS and his or her respective agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

R.      "FLSA SETTLEMENT CLASS" refers to any and all persons employed by DEFENDANT as a Yard Hand, Floor Hands, Lead Tong Hand, Motor Men, Derrick Hand, and/or Driller from February 2, 2012 through and including entry of the PRELIMINARY APPROVAL ORDER who opts-in by timely submitting a CLAIM FORM PACKAGE.

S.      "FORMER EMPLOYEE" is a member of the SETTLEMENT CLASSES who is not at the time of the COURT'S entry of the PRELIMINARY APPROVAL ORDER an employee of DEFENDANT.

T.      "LITIGATION" means the legal action commenced in *Peery v. Cactus Drilling Company, LLC*, in the United States District Court for the Eastern District of Texas, Tyler Division, Case Number 6:15-cv-00094-MHS

U.      "MAXIMUM GROSS SETTLEMENT AMOUNT" is $6,825,000.00.  The MAXIMUM GROSS SETTLEMENT AMOUNT represents the maximum amount that DEFENDANT would pay pursuant to this SETTLEMENT AGREEMENT if every member of the SETTLEMENT CLASSES participated in the settlement and received a SETTLEMENT PAYMENT, inclusive of SETTLEMENT PAYMENTS, COLLECTIVE

COUNSEL'S FEES, COSTS AND EXPENSES, SERVICE PAYMENTS, AND SETTLEMENT EXPENSES.  In addition to the MAXIMUM GROSS SETTLEMENT AMOUNT, DEFENDANT shall be responsible for paying all employer-paid payroll taxes including FUTA and the employer's share of FICA and state unemployment, as required by law with respect to settlement payments to AUTHORIZED CLAIMANTS.  AUTHORIZED CLAIMANTS will be responsible for their own tax obligations.

V.     "OBJECTION PERIOD" refers to the period beginning with the date SETTLEMENT NOTICE and CLAIM FORM PACKAGES are post-marked to members of the SETTLEMENT CLASSES and ending ninety calendar days thereafter.  Members of the SETTLEMENT CLASSES must timely file an objection so that it is received by the CLAIMS ADMINISTRATOR on or before ninety calendar days after the date SETTLEMENT NOTICE and CLAIM FORMS are post-marked to members of the SETTLEMENT CLASSES to be considered timely.

W.     "OBJECTOR" is a member of the PUTATIVE STATE LAW CLASS who has timely and properly objected to the SETTLEMENT AGREEMENT during the OBJECTION PERIOD.

X.     "OPT-IN CONSENT" refers to timely filing with the COURT of written consent to join the LITIGATION by a PUTATIVE FLSA CLASS member in compliance with the procedures set forth in the SETTLEMENT AGREEMENT.

Y.     "OPT-IN PERIOD" refers to the period beginning with the date the SETTLEMENT NOTICE and CLAIM FORM PACKAGES are post-marked to members of the SETTLEMENT CLASSES and ending ninety calendar days thereafter.  Members of the

PUTATIVE FLSA CLASS must timely file a CLAIM FORM PACKAGE so that they are received by the CLAIMS ADMINISTRATOR on or before ninety calendar days after the date the SETTLEMENT NOTICE is post-marked in order to opt-in to the FLSA SETTLEMENT CLASS and receive any monetary benefits from the SETTLEMENT AGREEMENT.

     Z.    "OPT-IN PLAINTIFFS" refers to those individuals who, at the time from the date on which the LITIGATION was commenced through the date on which the COURT enters its APPROVAL ORDER, file an OPT-IN CONSENT, as reflected on the COURT'S docket in this LITIGATION.

     AA.    An "OPT-OUT" is a member of the PUTATIVE STATE LAW CLASS who has timely and properly filed a Request for Exclusion during the OPT-OUT PERIOD.

     BB.    "OPT-OUT PERIOD" refers to the period beginning with the date the SETTLEMENT NOTICE and CLAIM FORMS are post-marked to members of the SETTLEMENT CLASSES and ending ninety calendar days thereafter. Members of the PUTATIVE STATE LAW CLASS must timely file a Request for Exclusion so that it is received by the CLAIMS ADMINISTRATOR on or before ninety calendar days after the date SETTLEMENT NOTICE and CLAIM FORMS are post-marked to members of the SETTLEMENT CLASSES to be considered timely and to exclude themselves from the STATE LAW SETTLEMENT CLASS.

     CC.    "PARTIES" refers to the PLAINTIFFS, OPT-IN PLAINTIFFS, and DEFENDANT and, in the singular, refers to any of them, as the context makes apparent.

     DD.    "PLAINTIFFS" refers to Brian Peery who with CLASS COUNSEL covenant

and represent that they are the duly-authorized legal agents for the SETTLEMENT CLASSES, including all OPT-IN PLAINTIFFS—including and not limited to Jeremy S. Cooper, Robert C. Gray, and Willie Richardson II—with respect to the LITIGATION and this SETTLEMENT AGREEMENT, and that they have the legal right and authority to act as representatives of the SETTLEMENT CLASSES, including all OPT-IN PLAINTIFFS, and to make decisions on their behalf concerning the LITIGATION, the method and manner of conducting the LITIGATION, and the execution of this SETTLEMENT AGREEMENT on behalf of the SETTLEMENT CLASSES, including all OPT-IN PLAINTIFFS.

EE.    "PRELIMINARY APPROVAL ORDER" refers to the order of the COURT: (1) asserting jurisdiction over the claims alleged, the PARTIES in the LITIGATION, and the implementation and administration of this SETTLEMENT AGREEMENT; (2) adjudging the terms of the SETTLEMENT AGREEMENT to be fair, reasonable and adequate, and in the best interests of the PLAINTIFFS, OPT-IN PLAINTIFFS, and members of the SETTLEMENT CLASSES, and directing consummation of its terms and provisions (3) certifying the SETTLEMENT CLASSES for settlement purposes only; (4) appointing Brian Peery, who together with CLASS COUNSEL, shall be authorized to act on behalf of all members of the SETTLEMENT CLASSES with respect to the LITIGATION and this SETTLEMENT AGREEMENT; (5) approving as to form and content the SETTLEMENT NOTICE and CLAIM FORM PACKAGES and authorizing the first-class mailing of the SETTLEMENT NOTICE and CLAIM FORM PACKAGES to all members of the SETTLEMENT CLASSES; (6) appointing PLAINTIFFS' Counsel as CLASS COUNSEL for the SETTLEMENT CLASSES pursuant to Section 216(b) of the FLSA and Federal Rule

12

of Civil Procedure 23; (7) approving CLASS COUNSEL'S application for an award of their fees, costs and expenses (8) appointing a third-party claims administrator as the CLAIMS ADMINISTRATOR pursuant to Section XI; and (9) setting a ninety calendar day deadline for the execution and return of fully completed CLAIM FORM PACKAGES.

FF.     "PRELIMINARY APPROVAL HEARING" means the hearing contemplated by the PARTIES, at which the COURT will approve the SETTLEMENT AGREEMENT and make such other rulings as are contemplated by this SETTLEMENT AGREEMENT and the PRELIMINARY APPROVAL ORDER.

GG.     "PUTATIVE FLSA CLASS" refers to any and all persons employed by DEFENDANT as a Yard Hand, Floor Hands, Lead Tong Hand, Motor Men, Derrick Hand, and/or Driller from February 2, 2012 through and including entry of the PRELIMINARY APPROVAL ORDER.

HH.     "PUTATIVE STATE LAW CLASS" refers to any and all persons employed by DEFENDANT as a Yard Hand, Floor Hands, Lead Tong Hand, Motor Men, Derrick Hand, and/or Driller in New Mexico from February 2, 2012 through and including entry of the PRELIMINARY APPROVAL ORDER.

II.     "RELEASED CLAIMS" refers to the released claims set forth in Section VIII. A.

JJ.     "RELEASED PERSONS" refers to DEFENDANT and each of its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of its/their past, present and future officers, directors,

13

trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by DEFENDANT, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was or could have been named as a defendant in the LITIGATION and any individual or entity which could be jointly liable with DEFENDANT and any other persons or entities acting on its behalf, including any party that was or could have been named as a defendant in the LITIGATION.

KK.   "RELEASING PERSONS" means each and every member of the FLSA RELEASING PERSONS and STATE LAW RELEASING PERSONS, his or her respective agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

LL.   "REVISED MAXIMUM GROSS SETTLEMENT AMOUNT" means the MAXIMUM GROSS SETTLEMENT AMOUNT minus CLASS COUNSEL'S FEES, COSTS AND EXPENSES, SETTLEMENT EXPENSES, and an amount equal to the AUTHORIZED CLAIMANTS' portion of taxes on SETTLEMENT PAYMENTS.

MM.   "SETTLEMENT AGREEMENT" refers to this Stipulation and Settlement Agreement.

NN.   "SETTLEMENT CLASSES" refers to those classes to be conditionally certified by the COURT solely for the purpose of effectuating this SETTLEMENT AGREEMENT.   The SETTLEMENT CLASSES shall consist of the PUTATIVE FLSA CLASS and the PUTATIVE STATE LAW CLASS.

OO.    "SERVICE PAYMENT" means the amount that may be approved by the COURT for payment to Plaintiff Peery in recognition of efforts on behalf of the SETTLEMENT CLASSES in the LITIGATION, in an amount not to exceed $10,000 as long as Plaintiff Peery is a member of the FINAL SETTLEMENT CLASSES.  This amount is included in the MAXIMUM GROSS SETTLEMENT AMOUNT.

PP.    "SETTLEMENT EXPENSES" means the reasonable fees, costs, and expenses incurred by the CLAIMS ADMINISTRATOR in performing the services authorized in this SETTLEMENT AGREEMENT.  The CLAIMS ADMINISTRATOR will submit a flat fee, all-inclusive budget to counsel for DEFENDANT for approval before performing any claims administrative services.

QQ.    "SETTLEMENT NOTICE" refers to the notice substantially in the form of Exhibit 3 to be directed to members of the SETTLEMENT CLASSES.  The purpose of the SETTLEMENT NOTICE is to inform members of the SETTLEMENT CLASSES about the LITIGATION and this SETTLEMENT AGREEMENT.

RR.    "SETTLEMENT PAYMENT" refers to the payment to which an AUTHORIZED CLAIMANT may become entitled pursuant to this SETTLEMENT AGREEMENT, as set forth more fully below in Section V.C.

SS.    "STATE LAW RELEASING PERSONS" means each and every member of the PUTATIVE STATE LAW CLASS who does not timely and validly exclude themselves from the classes in compliance with the opt-out and exclusion procedures set forth in this SETTLEMENT AGREEMENT, and his or her respective agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians,

estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

TT.   "STATE LAW SETTLEMENT CLASS" refers to any and all persons employed by DEFENDANT as a Yard Hand, Floor Hands, Lead Tong Hand, Motor Men, Derrick Hand, and/or Driller in New Mexico from February 2, 2012 through and including entry of the PRELIMINARY APPROVAL ORDER who do not timely and validly exclude themselves from the classes in compliance with the opt-out and exclusion procedures set forth in this SETTLEMENT AGREEMENT.

UU.   "SUBSTITUTE IRS W-9 FORM" refers to the language contained in the CLAIM FORM PACKAGE approved to substitute for an IRS Form W-9, Request for Taxpayer Identification Number and Certification.

## III.   CERTIFICATION OF THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES ONLY

A.   The PARTIES agree to request the COURT to certify, for settlement purposes only, the following SETTLEMENT CLASSES:

1.   The PUTATIVE STATE LAW CLASS under FED. R. CIV. P. 23; and
2.   The PUTATIVE FLSA CLASS under Section 216(b) of the FLSA.

B.   The SETTLEMENT AGREEMENT is contingent upon the approval and certification of the COURT of the SETTLEMENT CLASSES for settlement purposes only.

C.   DEFENDANT does not waive, and instead expressly reserves its rights to challenge the propriety of collective action certification for any purpose as if this SETTLEMENT AGREEMENT had not been entered into by the PARTIES should the COURT not approve the SETTLEMENT AGREEMENT or should counsel for a PARTY

exercise its rights to terminate the SETTLEMENT AGREEMENT.

## IV.   TERMS OF MAXIMUM GROSS SETTLEMENT AMOUNT

A.     Any amounts that are not distributed to the AUTHORIZED CLAIMANTS as SETTLEMENT PAYMENTS or pursuant to CLASS COUNSEL'S FEES, COSTS AND EXPENSES, SERVICE PAYMENTS, SETTLEMENT EXPENSES, and the AUTHORIZED CLAIMANTS' portion of taxes shall be retained by DEFENDANT and will remain DEFENDANT'S sole and exclusive property.

B.     The MAXIMUM GROSS SETTLEMENT AMOUNT shall not be segregated and may remain in DEFENDANT'S general funds until provided to the CLAIMS ADMINISTRATOR for distribution, as set forth below.

C.     In no event shall the total distribution and payments made by DEFENDANT, including but not limited to CLASS COUNSEL'S FEES, COSTS AND EXPENSES, SETTLEMENT PAYMENTS, SERVICE PAYMENTS, SETTLEMENT EXPENSES, and the AUTHORIZED CLAIMANTS' payroll and back-up withholding taxes, exceed the MAXIMUM GROSS SETTLEMENT AMOUNT.

D.     DEFENDANT may not be called upon or required to contribute additional monies above the MAXIMUM GROSS SETTLEMENT AMOUNT under any circumstances, except that, in addition to the MAXIMUM GROSS SETTLEMENT AMOUNT, DEFENDANT shall be responsible for paying all employer-paid owed payroll taxes including FUTA and the employer's share of FICA taxes, unemployment insurance and back-up withholding (if applicable), as required by law with respect to settlement payments to AUTHORIZED CLAIMANTS.  AUTHORIZED CLAIMANTS will be responsible for

remitting to State and/or Federal taxing authorities any applicable other taxes due and shall hold DEFENDANT harmless and indemnify RELEASED PARTIES for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority which result from an AUTHORIZED CLAIMANT'S failure to remit taxes due on payments made to the AUTHORIZED CLAIMANT pursuant to the SETTLEMENT AGREEMENT.

      E.     Any interest earned on the MAXIMUM GROSS SETTLEMENT AMOUNT during the period of settlement administration under this SETTLEMENT AGREEMENT will remain DEFENDANT'S sole and exclusive property.

**V.    TERMS OF SETTLEMENT**

      A.     On July 30, 2015, after the SETTLEMENT AGREEMENT is executed by Plaintiff Peery (on behalf of himself, PLAINTIFFS, OPT-IN PLAINTIFFS, and all members of the SETTLEMENT CLASSES), DEFENDANT, and counsel for the PARTIES, the PARTIES shall submit this SETTLEMENT AGREEMENT (including all exhibits referenced herein) to the COURT and jointly move the COURT for a PRELIMINARY APPROVAL ORDER.   Except to the extent provided below with respect to the termination of this SETTLEMENT AGREEMENT, the PARTIES agree to use their best efforts to secure a PRELIMINARY APPROVAL ORDER from the COURT.

      B.     Within twenty-five calendar days after the COURT enters an APPROVAL ORDER: (1) DEFENDANT shall provide the CLAIMS ADMINISTRATOR with a list containing the following information for each member of the SETTLEMENT CLASSES: name, last known address and phone number, and employee identification number (if known), and the dates employed by DEFENDANT in a Yard Hand, Floor Hands, Lead Tong

Hand, Motor Men, Derrick Hand, and/or Driller position at any time from February 2, 2012, through and including the date the COURT enters its PRELIMINARY APPROVAL ORDER; (2) CLASS COUNSEL shall also provide the CLAIMS ADMINISTRATOR with a list containing the following information for OPT-IN PLAINTIFFS: name, last known address and telephone number, and employee identification number (if known); and (3) CLASS COUNSEL shall provide the CLAIMS ADMINISTRATOR with any other name and contact information received by CLASS COUNSEL regarding other person(s) they believe are potential members of the SETTLEMENT CLASSES.

      C.      Within fifteen calendar days following receipt of the list of members of the SETTLEMENT CLASSES, the CLAIMS ADMINISTRATOR shall calculate the potential SETTLEMENT PAYMENTS for each member of the SETTLEMENT CLASSES in a manner reasonably calculated to approximate each member of the SETTLEMENT CLASSES pro rata share of the REVISED MAXIMUM GROSS SETTLEMENT AMOUNT based on the member of the SETTLEMENT CLASSES reasonably calculated unpaid overtime divided in the total unpaid overtime (as reasonably calculated by the CLAIMS ADMINISTRATOR) for all members of the SETTLEMENT CLASSES during the period from February 2, 2012, through and including the date the COURT enters its PRELIMINARY APPROVAL ORDER. The total of all potential SETTLEMENT PAYMENTS shall not exceed the REVISED MAXIMUM GROSS SETTLEMENT AMOUNT.

The total of all potential SETTLEMENT PAYMENTS shall not exceed the REVISED MAXIMUM GROSS SETTLEMENT AMOUNT.

D.     The CLAIMS ADMINISTRATOR shall provide its calculations to CLASS COUNSEL and counsel for DEFENDANT.  The calculations to be provided to CLASS COUNSEL shall identify PLAINTIFFS and OPT-IN PLAINTIFFS by name or other personal identifiers such as address or telephone number.

E.     CLASS COUNSEL and counsel for DEFENDANT shall have five business days to review, verify, and comment on the calculations provided by the CLAIMS ADMINISTRATOR.  The CLAIMS ADMINISTRATOR shall review any comments received from CLASS COUNSEL and/or counsel for DEFENDANT and shall finalize the potential SETTLEMENT PAYMENT calculations within five business days thereafter.  The CLAIMS ADMINISTRATOR'S determination (after input from CLASS COUNSEL and counsel for DEFENDANT) of the potential SETTLEMENT PAYMENT amounts for each member of the SETTLEMENT CLASSES shall be final.

F.     Within ten calendar days after the CLAIMS ADMINISTRATOR has finalized the potential SETTLEMENT PAYMENT amounts for each member of the SETTLEMENT CLASSES, the CLAIMS ADMINISTRATOR shall mail the Court-approved SETTLEMENT NOTICE and appropriate CLAIM FORM PACKAGE (and nothing else) to each member of the SETTLEMENT CLASSES, along with the PRELIMINARY APPROVAL ORDER. Prior to mailing, the CLAIMS ADMINISTRATOR shall attempt to confirm the accuracy of the addresses of the members of the SETTLEMENT CLASSES through the United States Post Office's National Change of Address database and the LEXIS-NEXIS database.  If the

CLAIMS ADMINISTRATOR is unable to locate a member of the SETTLEMENT CLASSES within sixty days after finalizing the potential SETTLEMENT PAYMENT, then potential SETTLEMENT PAYMENT designated for that member shall be retained by DEFENDANT and will remain DEFENDANT'S sole and exclusive property.   All mailings by the CLAIMS ADMINISTRATOR shall be by first-class mail.   If a SETTLEMENT NOTICE and CLAIM FORM PACKAGE is returned as undeliverable, the CLAIMS ADMINISTRATOR will perform no more than two skip traces and resend by first-class mail the COURT-approved SETTLEMENT NOTICE and CLAIM FORM PACKAGE twice only to those members of the SETTLEMENT CLASSES for whom it obtains more recent addresses.   Thirty calendar days prior to the BAR DATE, the CLAIMS ADMINISTRATOR shall mail a reminder postcard to members of the SETTLEMENT CLASSES reminding them of the approaching BAR DATE.

G.      Members of the SETTLEMENT CLASSES shall have one opportunity to contest the potential SETTLEMENT PAYMENT amount indicated in the SETTLEMENT NOTICE they receive.   A challenge by a member of the SETTLEMENT CLASSES must be received within twenty calendar days of the date on which the SETTLEMENT NOTICE was postmarked to be considered by the CLAIMS ADMINISTRATOR.   The CLAIMS ADMINISTRATOR shall notify DEFENDANT and CLASS COUNSEL of the receipt of any such challenge made by a member of any SETTLEMENT CLASSES, and DEFENDANT will have an opportunity to provide the CLAIMS ADMINISTRATOR evidence rebutting the challenge within ten calendar days of the receipt of notification of the challenge.   The CLAIMS ADMINISTRATOR shall make the final decision on the validity of

the challenge and the CLAIMS ADMINISTRATOR'S decision shall be binding on the PARTIES and the individual member of the SETTLEMENT CLASSES.

H.    The CLAIMS ADMINISTRATOR shall not post on its website the names or any other identifying information concerning the SETTLEMENT CLASSES, the SETTLEMENT AGREEMENT, or any other documents that are filed with the Court under seal, if any.

I.    The CLAIMS ADMINISTRATOR shall re-mail once only COURT-approved SETTLEMENT NOTICE and CLAIM FORM PACKAGES to any member of the SETTLEMENT CLASSES who contacts the CLAIMS ADMINISTRATOR during the time period between the initial mailing of the SETTLEMENT NOTICE and CLAIM FORM PACKAGES and the BAR DATE and requests that a SETTLEMENT NOTICE and CLAIM FORM PACKAGE be re-mailed.  No other communications shall be sent by either PARTY or their counsel to the members of the SETTLEMENT CLASSES.  CLASS COUNSEL shall not be barred by this SETTLEMENT AGREEMENT from communicating with PLAINTIFFS or OPT-IN PLAINTIFFS or from responding to inquiries they receive from members of the SETTLEMENT CLASSES, although they are barred from initiating any contact through the end of the BAR DATE with members of the SETTLEMENT CLASSES who are not PLAINTIFFS or OPT-IN PLAINTIFFS.  Nothing in this SETTLEMENT AGREEMENT shall be construed to prevent DEFENDANT from communicating with its employees or responding to inquiries from its employees regarding any matter.  However DEFENDANT agrees not to discourage any member of the SETTLEMENT CLASSES from participating in this settlement.

J.     In order to be an AUTHORIZED CLAIMANT, members of the SETTLEMENT CLASSES must properly complete and timely return a CLAIM FORM PACKAGE for receipt by the CLAIMS ADMINISTRATOR on or before the BAR DATE.

K.     Members of the PUTATIVE STATE LAW CLASS may OPT-OUT of the those classes by mailing a Request for Exclusion to the CLAIMS ADMINISTRATOR expressing his/her desire to be excluded from the STATE LAW SETTLEMENT CLASS, including his/her name (and former names, if any), current address, telephone number, and the dates of employment with DEFENDANT.   Any such Request for Exclusion must be received by the CLAIMS ADMINISTRATOR on or before ninety calendar days after the date SETTLEMENT NOTICE and CLAIM FORMS are first postmarked to members of the SETTLEMENT CLASSES.   Requests for Exclusion that do not include all required information, or that are not received by the CLAIM ADMINISTRATOR during the OPT-OUT PERIOD, will be deemed null, void, and ineffective.   A member of the PUTATIVE STATE LAW CLASS who submits a valid and timely request to OPT-OUT shall forfeit any right to distribution of a SETTLEMENT PAYMENT and will not be bound by the terms of the SETTLEMENT AGREEMENT, if it is approved, or the FINAL JUDGMENT of this LITIGATION.

L.     In the event a member of the SETTLEMENT CLASSES submits a CLAIM FORM PACKAGE (including SUBSTITUTE IRS W-9 FORM) in a timely manner (*i.e.*, received by the CLAIMS ADMINISTRATOR on or before the BAR DATE), but the CLAIM FORM and SUBSTITUTE IRS W-9 FORM is incomplete or otherwise deficient in one or more aspects, the CLAIMS ADMINISTRATOR will (no later than fourteen calendar

days following the BAR DATE) return the deficient document to the individual with a letter explaining the deficiencies and stating that the individual will have ten calendar days from the date the deficiency notice is postmarked to the member of the SETTLEMENT CLASSES to correct the deficiencies and resubmit the document.  The envelope containing the corrected and resubmitted CLAIM FORM and SUBSTITUTE IRS W-9 FORM must be postmarked within ten days of the date the deficiency notice is mailed to the individual to be considered timely.  The CLAIMS ADMINISTRATOR'S decision on whether the deficiency has been remedied shall be binding on the PARTIES and the individual member of the SETTLEMENT CLASSES.

   M. Within fifteen calendar days after the deadline for the submission of corrected CLAIM FORM PACKAGES to the CLAIMS ADMINISTRATOR, but before the date of the FINAL APPROVAL HEARING, the CLAIMS ADMINISTRATOR shall certify jointly to CLASS COUNSEL and DEFENDANT'S counsel (1) a list of all members of the SETTLEMENT CLASSES who timely filed a CLAIM FORM PACKAGE (including SUBSTITUTE IRS W-9 FORM); (2) a list of all members of the SETTLEMENT CLASSES who filed a timely objection; (3) the percentage and list of all members of the PUTATIVE STATE LAW CLASS who requested to OPT-OUT at any time during the OPT-OUT PERIOD; and (4) the total SETTLEMENT PAYMENT due to each AUTHORIZED CLAIMANT, and provide that information to CLASS COUNSEL and DEFENDANT'S counsel on a CD.

   N. As soon as practicable following the BAR DATE and the resolution of any deficient submissions, but before the date of the FINAL APPROVAL HEARING, the

CLAIMS ADMINISTRATOR shall provide CLASS COUNSEL and DEFENDANT'S counsel with a declaration of due diligence and proof of mailing with regard to the mailing of the SETTLEMENT NOTICE and CLAIM FORM PACKAGES. CLASS COUNSEL shall bear the responsibility of filing this declaration with the COURT prior to the date of the FINAL APPROVAL HEARING.

      O.    Within five calendar days of the FINAL EFFECTIVE DATE, DEFENDANT shall provide the CLAIMS ADMINISTRATOR or Qualified Settlement Fund with funds sufficient to enable the CLAIMS ADMINISTRATOR to satisfy the payment obligations to AUTHORIZED CLAIMANTS and CLASS COUNSEL'S FEES, COSTS AND EXPENSES.

      P.    Within thirty calendar days after the FINAL EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall mail SETTLEMENT PAYMENTS to AUTHORIZED CLAIMANTS shall be mailed along with a copy of the FINAL APPROVAL ORDER. The CLAIMS ADMINISTRATOR shall mail these funds to the address provided by the AUTHORIZED CLAIMANT on his or her CLAIM FORM PACKAGE or at an updated address provided by the AUTHORIZED CLAIMANT.

      Q.    The PARTIES agree that each SETTLEMENT PAYMENT to be issued to each AUTHORIZED CLAIMANT shall be separated into two equal amounts: fifty percent shall be allocated to the claims asserted in the LITIGATION for unpaid overtime and other wage-related damages, and fifty percent shall be allocated to the claims asserted in the LITIGATION for liquidated damages. Each SETTLEMENT PAYMENT shall be subject to all required employee paid payroll taxes and deductions (*e.g.*, federal income taxes, state

income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other authorized or required deductions (*e.g.*, garnishments, tax liens, child support). The portion allocated to liquidated damages shall be characterized as non-wage income to the recipient. The CLAIMS ADMINISTRATOR will report the wage portion to each AUTHORIZED CLAIMANT on an IRS Form W-2, and the non-wage portion (including the AUTHORIZED CLAIMANT'S pro rata share of the amount approved by the COURT for payment of CLASS COUNSEL'S FEES, COSTS AND EXPENSES) on one or more IRS 1099 misc forms. The CLAIMS ADMINISTRATOR shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each AUTHORIZED CLAIMANT and mailing the settlement checks, IRS Form W-2s and IRS 1099 misc forms to each AUTHORIZED CLAIMANT and CLASS COUNSEL.

      R.    Each AUTHORIZED CLAIMANT will have one hundred and eighty calendar days from the date on which the SETTLEMENT PAYMENTS are mailed to negotiate his or her settlement check(s). If any settlement check is not negotiated in that period of time, that settlement check will be voided, and a stop-payment will be placed on the settlement check. Any individual SETTLEMENT PAYMENTS or portions thereof which remain unclaimed for any reason one hundred and eighty calendar days following the mailing of the SETTLEMENT PAYMENT shall be deemed unclaimed. In such event, those AUTHORIZED CLAIMANTS will be deemed to have irrevocably waived any right in or claim to a SETTLEMENT PAYMENT, but the SETTLEMENT AGREEMENT and release of claims contained therein nevertheless will be binding upon them. Unless otherwise required by the relevant state escheatment laws, one hundred percent of such net

unclaimed funds shall be retained by DEFENDANT.  Neither DEFENDANT, counsel for DEFENDANT, CLASS COUNSEL, PLAINTIFFS, nor the CLAIMS ADMINISTRATOR shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks.  Without limiting the foregoing, in the event an AUTHORIZED CLAIMANT notifies the CLAIMS ADMINISTRATOR that he or she believes that a settlement check has been lost or stolen, the CLAIMS ADMINISTRATOR shall immediately stop payment on such check.  If the settlement check in question has not been negotiated prior to the stop payment order, the CLAIMS ADMINISTRATOR will issue a replacement check, from which the fees associated with the stop payment order will first be deducted.  If the settlement check in question has been negotiated prior to the stop payment order, the AUTHORIZED CLAIMANT shall be responsible for reimbursing DEFENDANT for the fees associated with the stop payment order.  The AUTHORIZED CLAIMANT will have an additional forty-five calendar days to negotiate the re-issued check from the date of re-mailing.  If any settlement check is not negotiated in that period of time, that settlement check will be voided.

## VI.    CLASS COUNSEL'S FEES, COSTS, AND EXPENSES

A.    CLASS COUNSEL may make an application to the COURT for an award of attorneys' reasonable fees, costs, and expenses in an amount not to exceed thirty-five percent of the MAXIMUM GROSS SETTLEMENT AMOUNT.  Such application shall be filed in connection with final approval of the SETTLEMENT AGREEMENT.

B.    If the COURT rules that any amount requested by CLASS COUNSEL for attorneys' fees, costs, and/or expenses is excessive and reduces the same, only the reduced amount will be deemed to be CLASS COUNSEL'S FEES, COSTS AND EXPENSES for purposes of this SETTLEMENT AGREEMENT.  Any remaining or reduced amount(s) shall be retained by Defendant.

C.    Payment of such CLASS COUNSEL'S FEES, COSTS AND EXPENSES to CLASS COUNSEL as set forth in this SETTLEMENT AGREEMENT shall constitute full satisfaction of any and all obligations by RELEASED PERSONS to pay any person, attorney, or law firm (including but not limited to CLASS COUNSEL) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) incurred on behalf of all RELEASING PERSONS and shall relieve the RELEASED PERSONS of any other claims or liability to any person for any attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) to which any person may claim to be entitled on behalf of any RELEASING PERSONS for this LITIGATION.  Upon payment of CLASS COUNSEL'S FEES, COSTS AND EXPENSES hereunder, CLASS COUNSEL and RELEASING PERSONS shall release RELEASED PERSONS from any and all claims for attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) relating to this LITIGATION.  CLASS COUNSEL further represent and certify that they are not aware of any liens for attorneys' fees, expenses, or costs existing, filed, or asserted with respect to any of the claims asserted in this LITIGATION.

D.      CLASS COUNSEL shall be paid CLASS COUNSEL'S FEES, COSTS AND EXPENSES via electronic means.  Prior to any payment of the amount designated as CLASS COUNSEL'S FEES, COSTS AND EXPENSES, each individual CLASS COUNSEL shall provide DEFENDANT and the CLAIMS ADMINISTRATOR with consistent written instructions regarding how the amount shall be allocated (*e.g.*, which law firm to receive what amount) as well as all information necessary to effectuate such payments (*e.g.*, executed IRS Forms W-9).  The CLAIMS ADMINISTRATOR will issue a respective IRS Form 1099 misc for their award of CLASS COUNSEL'S FEES, COSTS AND EXPENSES.

E.      Within seven calendar days of the FINAL EFFECTIVE DATE, CLAIMS ADMINISTRATOR will pay CLASS COUNSEL'S FEES, COSTS AND EXPENSES via electronic means, if the conditions above have been satisfied.

F.      The CLAIMS ADMINISTRATOR will report as income on an IRS Form 1099 misc each AUTHORIZED CLAIMANT'S pro rata share of the amount approved by the COURT for payment of CLASS COUNSEL'S FEES, COSTS AND EXPENSES.

## VII.    SERVICE PAYMENTS

A.      CLASS COUNSEL may also make an application to the COURT for one-time SERVICE PAYMENT award to Plaintiff Peery in recognition of the work and services that he contributed to the case including, but not limited to, investigative work, meetings with CLASS COUNSEL, assumption of risks, serving as class representative, and participation in settlement negotiations and related activities.  The SERVICE PAYMENT shall not exceed $10,000 to Plaintiff Peery.  The final amount of any SERVICE PAYMENT (not to exceed $10,000) shall be determined by the COURT.

B.     The CLAIMS ADMINISTRATOR will make the SERVICE PAYMENT (in the amount approved by the COURT) within forty-five calendar days after the FINAL EFFECTIVE DATE for Plaintiff Peery who becomes an AUTHORIZED CLAIMANT.

C.     Half of the SERVICE PAYMENT will be paid by check payable to Plaintiff Peery attributable to wages and from which Defendant will make the required withholding and pay the required taxes and issue a W-2 to Plaintiff Peery; and the other half of which will be paid by check payable to Plaintiff Peery attributable to liquidated damages from which no withholdings shall be made and which shall be reported on a Form 1099 issued to Plaintiff Peery.

D.     The SERVICE PAYMENT shall be paid out of the GROSS MAXIMUM SETTLEMENT AWARD.

## VIII.   RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS

A.     Release by RELEASING PERSONS: Effective as of the FINAL EFFECTIVE DATE, each and every RELEASING PERSON hereby forever completely settles, compromises, releases, and discharges DEFENDANT and the RELEASED PERSONS from: (1) any and all claims asserted in the LITIGATION; (2) any and all claims for unpaid wages, minimum wages, liquidated damages, attorneys' fees, costs and expenses, pre- and post-judgment interest, overtime, or non-payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind arising under the FLSA, 29 U.S.C. § 201, *et seq.*; (3) any and all claims arising under the wage and hour laws and regulations of the state of New Mexico, including but not limited to wage and hour claims arising under: (a)

the New Mexico Minimum Wage Act; and/or (b) New Mexico common law; (4) any and all claims arising under the wage and hour laws and regulations of the state of Oklahoma; (5) any and all claims arising under the wage and hour laws and regulations of the state of Texas; (6) any and all claims under state and federal law for breach of express contract or labor agreement (for earned wages, overtime, and/or and missed or interrupted meal breaks), implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (7) any and all claims pursuant to or derived from ERISA, 29 U.S.C. § 1001, *et seq.,* based on any alleged failure to pay wages, including but not limited to minimum wages or overtime wages; (8) any and all claims for attorneys' fees, costs and expenses; and (9) any and all wage-and-hour laws or wage-related claims of any kind under any other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations, which any RELEASING PERSON has or might have, known or unknown, asserted or unasserted, that occurred at any time from February 2, 2012 through and including the date the COURT enters a PRELIMINARY APPROVAL ORDER.

The RELEASING PERSONS further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages or any other form of relief based on any claims asserted or settled in this LITIGATION which may arise out of, or in connection with any other individual, union representative, class or any administrative or arbitral remedies pursued by any individual, class, union or federal, state or local governmental agency against any of DEFENDANT and/or RELEASED PERSONS.  RELEASING PERSONS further acknowledge that they are enjoined from pursuing any RELEASED CLAIMS they have, had, might have or might have

had against any of the DEFENDANT and/or RELEASED PERSONS based on any act or omission that occurred during the period February 12, 2012 up to and including the date the COURT enters a PRELIMINARY APPROVAL ORDER.

B.    No Assignment:  PLAINTIFFS' Counsel and PLAINTIFFS, for themselves, represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the LITIGATION, or any related action.  Upon the EFFECTIVE DATE of this SETTLEMENT AGREEMENT, members of the FINAL SETTLEMENT CLASSES represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the LITIGATION, or any related action.

C.    All members of the FINAL SETTLEMENT CLASSES will be bound by the terms and conditions of this SETTLEMENT AGREEMENT, FINAL APPROVAL ORDER, the FINAL JUDGMENT, and the releases set forth herein.

## IX.    MEDIA AND CONFIDENTIALITY OBLIGATIONS

A.    PLAINTIFFS, OPT-IN PLAINTIFFS, and CLASS COUNSEL shall not during the OPT-IN PERIOD: (1) issue a press release or otherwise notify the media about the terms of the SETTLEMENT AGREEMENT; (2) advertise or make any public statements regarding any of the terms of the SETTLEMENT AGREEMENT through written, recorded

or electronic communications; or (3) issue any press release, other than the joint press release contemplated in this Section.

B.    PLAINTIFFS, OPT-IN PLAINTIFFS, and CLASS COUNSEL shall draft a notice and "FAQs" mutually agreeable to DEFENDANT, which will be posted on the CLAIMS ADMINISTRATOR'S website.

C.    To the extent that CLASS COUNSEL is contacted by the media about this SETTLEMENT AGREEMENT, they shall be permitted to respond to such inquiries by stating that the PARTIES have reached a settlement subject to COURT approval, and that the PARTIES believe they have reached a fair and reasonable settlement of the disputed claims. PLAINTIFFS, OPT-IN PLAINTIFFS, and CLASS COUNSEL may not disclose any of the specific terms of the SETTLEMENT AGREEMENT.    PLAINTIFFS and OPT-IN PLAINTIFFS shall certify at the time they sign their CLAIM FORM PACKAGES that they have not violated the obligations in this Section.

D.    Subsequent to the entry of the COURT'S FINAL APPROVAL ORDER and following the FINAL EFFECTIVE DATE, the PARTIES will issue a joint press release which will not disclose the MAXIMUM GROSS SETTLEMENT AMOUNT or REVISED MAXIMUM GROSS SETTLEMENT AMOUNT.

E.    A "breach" of the Media and Confidentiality Obligations is any disclosure by PLAINTIFFS, OPT-IN PLAINTIFFS, and COLLECTIVE COUNSEL of the terms or conditions of the SETTLEMENT AGREEMENT beyond those permitted by this Section. In the event of any such breach or threatened breach, DEFENDANT, PLAINTIFFS, OPT-IN PLAINTIFFS, and CLASS COUNSEL shall, in addition to any other remedies available to it,

be entitled to seek a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining the PARTY from any actual or threatened breach.

## X.   BINDING EFFECT; EXCLUSION, OPT-OUT AND OBJECTION RIGHTS

A.   Right of members of PUTATIVE STATE LAW CLASS to OPT-OUT:  Any member of the PUTATIVE STATE LAW CLASS may elect to OPT-OUT and be excluded from those classes at any time during the OPT-OUT PERIOD.  To be an OPT-OUT, any such election must be made in writing; must contain the name, address and telephone number of the individual requesting exclusion; must be signed by the individual who is electing to OPT-OUT; and must be filed with the CLAIMS ADMINISTRATOR so that it is received by the CLAIMS ADMINISTRATOR on or before ninety calendar days after the date of SETTLEMENT NOTICE and CLAIM FORMS to members of the SETTLEMENT CLASSES is post-marked. Any member of the PUTATIVE STATE LAW CLASS who is an OPT-OUT:  shall not (i) have any rights under this SETTLEMENT AGREEMENT; (ii) be entitled to receive a SETTLEMENT PAYMENT; and (iii) be bound by this SETTLEMENT AGREEMENT, the FINAL APPROVAL ORDER, or the FINAL JUDGMENT, unless they timely file a CLAIM FORM.

B.   Binding Effect on members of FINAL SETTLEMENT CLASSES:  Except for those members of the PUTATIVE STATE LAW CLASS who validly exclude themselves in compliance with the procedures set forth above, all members of the PUTATIVE STATE LAW CLASS and FLSA SETTLEMENT CLASS will be deemed to be members of the FINAL   SETTLEMENT   CLASSES   for   all   purposes   under   this   SETTLEMENT

AGREEMENT; will be bound by the terms and conditions of this SETTLEMENT AGREEMENT, the FINAL APPROVAL ORDER, the FINAL JUDGMENT, and the releases set forth herein; and will be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the settlement.

      C.    <u>Right to Object</u>: Any member of the PUTATIVE STATE LAW CLASS may object to this SETTLEMENT AGREEMENT, provided that such objections are made in a writing filed with the CLAIMS ADMINISTRATOR and served on counsel for the PARTIES on or before the last day of the OBJECTION PERIOD. Such objection shall include the name and address of the OBJECTOR, a detailed statement of the basis for each objection asserted, the grounds on which the OBJECTOR desires to appear and be heard (if any), and, if the OBJECTOR is represented by counsel, the name and address of counsel. No member of the PUTATIVE STATE LAW CLASS may be heard at the FINAL APPROVAL HEARING who has not complied with this requirement, and any member of the PUTATIVE STATE LAW CLASS who fails to comply with this requirement will be deemed to have waived any right to object and any objection to the SETTLEMENT AGREEMENT.

## XI.    CLAIMS ADMINISTRATION

      A.    Within ten calendar days of the execution of this SETTLEMENT AGREEMENT, the PARTIES shall engage a CLAIMS ADMINISTRATOR that is determined by DEFENDANT and that shall be appointed by the Court at the request of the DEFENDANT.

      B.    The SETTLEMENT EXPENSES are to be paid by DEFENDANT.

C.     The CLAIMS ADMINISTRATOR will perform all of the administrative duties assigned herein, including: (1) calculating the REVISED MAXIMUM GROSS SETTLEMENT AMOUNT;  (2) calculating the estimated, potential, and actual individualized SETTLEMENT PAYMENTS for each member of the SETTLEMENT CLASSES and FINAL SETTLEMENT CLASSES; (3) formatting and printing the SETTLEMENT NOTICE, CLAIM FORMS and SUBSTITUTE W-9 FORM, and mailing a SETTLEMENT NOTICE and an appropriate CLAIM FORM PACKAGE to members of the SETTLEMENT CLASSES; (4) notifying the counsel for all PARTIES of timely and untimely submissions of CLAIM FORM PACKAGES by members of the SETTLEMENT CLASSES; (5) notifying counsel for all PARTIES of, and resolving any disputes regarding, claims by any member of the SETTLEMENT CLASSES; (6) copying counsel for all PARTIES on material correspondence and promptly notifying all counsel for the PARTIES of any material requests or communications made by any PARTY; (7) receiving and reviewing the CLAIM FORM PACKAGES, including CLAIM FORMS and SUBSTITUTE W-9 FORMS submitted by members of the SETTLEMENT CLASSES to determine eligibility to receive a SETTLEMENT PAYMENT; (8) maintaining the original mailing envelope in which CLAIM FORMS and SUBSTITUTE W-9 FORMS, and other correspondence is received; (9) promptly furnishing to CLASS COUNSEL and DEFENDANT'S counsel copies of any requests to OPT-OUT and/or objections which the CLAIMS ADMINISTRATOR receives; (10) mailing a SETTLEMENT PAYMENT and SERVICE PAYMENT (if applicable) to AUTHORIZED CLAIMANTS; (11) electronically transferring CLASS COUNSEL'S FEES AND COSTS in accordance with the

SETTLEMENT AGREEMENT; (12) ascertaining current address and addressee information for each SETTLEMENT NOTICE and CLAIM FORM PACKAGE returned as undeliverable and conducting a second mailing to the current address, if ascertained; (13) responding to inquiries of members of the SETTLEMENT CLASSES regarding the terms of settlement and procedures for submitting CLAIM FORM PACKAGES, objections, and requests to OPT-OUT; (14) referring to counsel for the PARTIES all inquiries by members of the SETTLEMENT CLASSES regarding matters not within the CLAIMS ADMINISTRATOR'S duties specified herein; (15) promptly apprising counsel for the PARTIES of the activities of the CLAIMS ADMINISTRATOR; (16) maintaining adequate records of its activities, including the dates of the mailing of SETTLEMENT NOTICE(s) and mailing and receipt of CLAIMS FORM(s) and mailing of SETTLEMENT PAYMENTS, returned mail and other communications and attempted written or electronic communications with members of the SETTLEMENT CLASSES; (17) confirming in a declaration its completion of the administration of the SETTLEMENT AGREEMENT; (18) timely responding to communications from the PARTIES or their counsel; (19) formatting, printing, and mailing to AUTHORIZED CLAIMANTS the Court's PRELIMINARY APPROVAL ORDER; (20) escheating non-negotiated checks to the appropriate state agency, to the extent required by applicable law; (21) calculating and paying the DEFENDANT'S portion of taxes on SETTLEMENT PAYMENTS, including but not limited to all FICA and FUTA taxes on SETTLEMENT PAYMENTS; (22) performing all tax reporting duties required by federal, state, or local law; (23) setting up a Qualified Settlement Fund to which DEFENDANT shall electronically transfer funds sufficient to enable the CLAIMS ADMINISTRATOR to

satisfy the payment obligations to members of the AUTHORIZED CLAIMANTS and CLASS COUNSEL'S FEES AND COSTS; (24) protecting personal data of members of the SETTLEMENT CLASSES from public disclosure; (25) maintaining reasonable administrative, physical, and technical controls that will protect the confidentiality, security, integrity, and availability of personal data of the members of the SETTLEMENT CLASSES; (26) delivering to CLASS COUNSEL and DEFENDANT'S counsel a CD containing all data pertaining to members of the SETTLEMENT CLASSES, including information relating to the mailing of CLAIMS FORM PACKAGES and the receipt of signed CLAIMS FORM PACKAGES, and copies of all signed CLAIM FORMS; (27) maintaining all records, electronic or otherwise, relating to the administration of this SETTLEMENT AGREEMENT, for a period of two (2) years after the date of FINAL JUDGMENT; (28) such other tasks contained in the SETTLEMENT AGREEMENT; and (29) such other tasks as the PARTIES mutually agree.

      D.     CLASS COUNSEL and DEFENDANT'S counsel have the right to review and approve any documents to be mailed by the CLAIMS ADMINISTRATOR prior to their mailing, and the CLAIMS ADMINISTRATOR may not mail any documents without first receiving written approval to send the documents from CLASS COUNSEL and DEFENDANT'S counsel.

      E.     The PARTIES shall be permitted to conduct a risk assessment of the CLAIMS ADMINISTRATOR to verify that the CLAIMS ADMINISTRATOR has in place an effective information security program capable of protecting the personal information of the members of the SETTLEMENT CLASSES.  In addition, the CLAIMS ADMINISTRATOR

will be required to contractually obligate itself to maintain reasonable physical, administrative, and technical controls to protect such information.  Either party may object to the selection of a CLAIMS ADMINISTRATOR which does not pass the assessment process or which will not agree to reasonable contractual commitments regarding the security of member information.

## XII.   TERMINATION OF THE SETTLEMENT AGREEMENT

A.   Grounds for Settlement Termination:  This SETTLEMENT AGREEMENT may be terminated on the following grounds:

1.   CLASS COUNSEL or DEFENDANT'S counsel may terminate the SETTLEMENT AGREEMENT if the COURT declines to enter an APPROVAL ORDER, or judgment in the form submitted by the PARTIES, or the SETTLEMENT AGREEMENT does not become final for any other reason, or a Court of Appeals reverses the entry of an APPROVAL ORDER or judgment.

2.   If five percent or more of the members of the PUTATIVE STATE LAW CLASS exercise their rights to OPT-OUT and be excluded from the STATE LAW SETTLEMENT CLASS and this SETTLEMENT AGREEMENT, DEFENDANT shall have the right, notwithstanding any other provisions of this SETTLEMENT AGREEMENT, to withdraw from this SETTLEMENT AGREEMENT, whereupon the SETTLEMENT AGREEMENT will be null and void for all purposes and may not be used or introduced in further LITIGATION or any other proceeding of any kind.

B.   Procedures for Termination:   To terminate this SETTLEMENT AGREEMENT on one of the grounds specified above, the terminating Counsel (*i.e.*, CLASS

39

COUNSEL or counsel for DEFENDANT) shall give written notice to the opposing Counsel no later than:

1.    15 business days after the COURT acts;
2.    15 business days after a Notice of Appeal is filed; or
3.    15 business days after DEFENDANT receives notice from the CLAIMS ADMINISTRATOR that five percent or more of the members of the PUTATIVE STATE LAW CLASS exercised their rights to OPT-OUT and be excluded from those classes and this SETTLEMENT AGREEMENT.

C.    <u>Effect of Termination</u>:  In the event that this SETTLEMENT AGREEMENT is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the LITIGATION is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any COURT:

1.    The SETTLEMENT AGREEMENT shall be terminated and shall have no force or effect, and no PARTY shall be bound by any of its terms;

2.    In the event the SETTLEMENT AGREEMENT is terminated, DEFENDANT shall have no obligation to make any payments to any PARTY, member of the SETTLEMENT CLASSES, or CLASS COUNSEL, except that DEFENDANT shall be responsible for paying the CLAIMS ADMINISTRATOR for services rendered up to the date the CLAIMS ADMINISTRATOR is notified that the SETTLEMENT AGREEMENT has been terminated.

3.    The PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, and/or judgment, including any order of class or collective certification, shall be vacated;

4.    The SETTLEMENT AGREEMENT and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the

40

PARTIES, all of whom shall be restored to their respective positions in the action prior to the settlement; and

      5.    Neither this SETTLEMENT AGREEMENT, nor any ancillary documents, actions, statements or filings in furtherance of settlement hall be admissible or offered into evidence in the LITIGATION or any other action for any purpose whatsoever.

      6.    DEFENDANT reserves the right to oppose class and/or collective action certification and move to decertify any FLSA collective action should the SETTLEMENT AGREEMENT not become final.

## XIII.  PARTIES' AUTHORITY

      A.    The signatories hereby represent that they are fully authorized to enter into this SETTLEMENT AGREEMENT and bind the PARTIES hereto to the terms and conditions hereof.

      B.    PLAINTIFFS acknowledges that they are, together with CLASS COUNSEL, fully authorized to bind themselves, OPT-IN PLAINTIFFS, and members of the SETTLEMENT CLASSES to all terms set forth in this SETTLEMENT AGREEMENT, regardless of whether each member of the SETTLEMENT CLASSES timely submits a fully completed CLAIM FORM PACKAGE.

      C.    It is agreed that because the members of the SETTLEMENT CLASSES are so numerous, it is impossible or impractical to have each member of the SETTLEMENT CLASSES execute the SETTLEMENT AGREEMENT.  The SETTLEMENT NOTICE and FINAL APPROVAL ORDER will advise all members of the SETTLEMENT CLASSES of the binding nature of the release, and that the release will have the same force

and effect upon members of the FINAL SETTLEMENT CLASSES as if the SETTLEMENT AGREEMENT were executed by each member of the FINAL SETTLEMENT CLASSES.

## XIV.  MUTUAL FULL COOPERATION

The PARTIES agree to fully cooperate with each other to accomplish the terms of the SETTLEMENT AGREEMENT, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the SETTLEMENT AGREEMENT.  The PARTIES to the SETTLEMENT AGREEMENT shall use their best efforts, including all efforts contemplated by the SETTLEMENT AGREEMENT and any other efforts that may become necessary by order of the COURT, or otherwise, to effectuate the SETTLEMENT AGREEMENT and the terms set forth herein. As soon as practicable after execution of the SETTLEMENT AGREEMENT, PLAINTIFFS and PLAINTIFFS' counsel shall, with the assistance and cooperation of DEFENDANT and DEFENDANT'S counsel, take all necessary steps to secure the COURT'S final approval of the SETTLEMENT AGREEMENT.

## XV.   NOTICES

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

<u>To PLAINTIFFS, OPT-IN PLAINTIFFS, SETTLEMENT CLASSES:</u>

 Michael Josephson, Esq.
 FIBICH, HAMPTON, LEEBRON, BRIGGS & JOSEPHSON, LLP
 1150 Bissonnet
 Houston, Texas 77005
 (713) 751-0025
 mjosephson@fhl-law.com

 <u>To DEFENDANT:</u>

 John McCarthy
 LITTLER MENDELSON, P.C.
 2001 Ross Avenue
 Suite 1500, Lock Box 116
 Dallas, TX 75201-2931
 jmccarthy@littler.com

## XVI. CONSTRUCTION AND INTERPRETATION

 A. The PARTIES hereto agree that the terms and conditions of the SETTLEMENT AGREEMENT are the result of lengthy, intensive, arms-length negotiations among the PARTIES, and the SETTLEMENT AGREEMENT shall not be construed in favor of or against any PARTY by reason of the extent to which any PARTY or his, her, or its counsel participated in the drafting of the SETTLEMENT AGREEMENT.

 B. Paragraph titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this SETTLEMENT AGREEMENT or an of its provisions. Each term of this SETTLEMENT AGREEMENT is contractual and not merely a recital.

C.      This SETTLEMENT AGREEMENT shall be subject to and governed by the laws of the State of Texas and subject to the continuing jurisdiction of the United States District Court for the Eastern District of Texas, Tyler Division.

## XVII. FORM AND CONTENT RESOLUTION

A.      The PARTIES agree they must reach agreement on the form and content of the SETTLEMENT AGREEMENT and its exhibits, the PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, and the Motions for Approval.

B.      The PARTIES agree that in the event they dispute and reach impasse as to any of the settlement terms or the form and content of any documents necessary to effectuate the SETTLEMENT AGREEMENT that cannot be resolved among the PARTIES themselves with the assistance of the CLAIMS ADMINISTRATOR, any and all such disputes may be submitted to Mediator _____ for final and binding resolution.  The PARTIES shall equally divide all costs of such mediation, but the PARTIES shall bear their own expenses for attorneys' fees, expenses, and costs.

## XVIII. INTEGRATION CLAUSE

This SETTLEMENT AGREEMENT sets forth the entire agreement between the PARTIES hereto, excepting the Confidential Settlement Agreement between DEFENDANT and Plaintiff Peery dated August 28, 2015.

## XIX.    BINDING ON ASSIGNS

This SETTLEMENT AGREEMENT shall be binding upon and inure to the benefit of the PARTIES and his or her respective agents, heirs, beneficiaries, devisees, legatees,

executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

## XX.    MODIFICATION

No rights hereunder may be waived or modified except in a writing signed by duly authorized representatives of the PARTIES.

## XXI.   ENFORCEMENT OF THE SETTLEMENT AGREEMENT

A.    In the event of a dispute concerning the rights or obligations under the SETTLEMENT AGREEMENT or breach of a term of the SETTLEMENT AGREEMENT, notice must be mailed to opposing counsel as provided in Section XV. After receipt of notice, the PARTIES shall meet and confer in a good faith attempt to resolve the matter within ten calendar days. In the event those efforts are unsuccessful and one or more of the PARTIES attempts to institute any legal action or other proceeding against any other PARTY or PARTIES to enforce the provisions of this SETTLEMENT AGREEMENT or to declare rights and/or obligations under this SETTLEMENT AGREEMENT, the successful PARTY or PARTIES shall be entitled to recover from the unsuccessful PARTY or PARTIES reasonable attorneys' fees, expenses, and costs, including expert witness fees incurred in connection with any enforcement actions, and any damages incurred. Likewise, DEFENDANT shall be entitled to recover from members of the SETTLEMENT CLASSES who breach of a term of the SETTLEMENT AGREEMENT reasonable attorneys' fees, expenses, and costs, including expert witness fees incurred in connection with any enforcement actions, and any damages incurred.

## XXII.  COUNTERPARTS

The SETTLEMENT AGREEMENT may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one SETTLEMENT AGREEMENT, which shall be binding upon and effective as to all PARTIES.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT on:

**REPRESENTATIVE PLAINTIFF:**        **DEFENDANT:**

*Brian Peery*
Brian Peery (Aug 28, 2015)
Brian Peery                                     By:_____

                                            Name:_____

**ON BEHALF OF HIMSELF AND ALL**
**OPT-IN PLAINTIFFS, AND**                   Title:_____
**MEMBERS OF SETTLEMENT**
**CLASSES**

                                          Date: _____

Date: Aug 28, 2015

**CLASS COUNSEL:**

_____
Michael Josephson, Esq.
FIBICH, HAMPTON, LEEBRON,
BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
(713) 751-0025
mjosephson@fhl-law.com

_____
Richard J. (Rex) Burch

46

## XXII. COUNTERPARTS

The SETTLEMENT AGREEMENT may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one SETTLEMENT AGREEMENT, which shall be binding upon and effective as to all PARTIES.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT on:

**REPRESENTATIVE PLAINTIFF:**

_____

Brian Peery

**ON BEHALF OF HIMSELF AND ALL OPT-IN PLAINTIFFS, AND MEMBERS OF SETTLEMENT CLASSES**

Date: _____

**DEFENDANT:**

By: _Kathryn B Wllybe_

Name: _Kathryn B Willingham_

Title: _VP HR i HSE_

Date: _8-28-15_

**CLASS COUNSEL:**

_____

Michael Josephson, Esq.
FIBICH, HAMPTON, LEEBRON,
BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
(713) 751-0025
mjosephson@fhl.law.com

_____

Richard J. (Rex) Burch

46

**Bruckner Burch, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Phone:  713-877-8788
Fax:  713-877-8065
rburch@brucknerburch.com

Date: _8/28/2015_

Firmwide:134010590.3 050045.1013